UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MIKE VICKERS, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:13-cv-1162 |
| | ) Judge Trauger |
| v. | ) |
| | ) |
| CRACKER BARREL OLD | ) |
| COUNTRY STORE, INC., ET AL. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Pending before the court is a Motion to Dismiss (Docket No. 14) filed by defendants Sandra Cochran, Jay Janssen, Nick Flanagan, and Doug Barber (the "Individual Defendants"),[1] to which the plaintiff, Mike Vickers, has filed a Response in opposition (Docket Nos. 19-20), and the defendant has filed a Reply (Docket No. 21). For the reasons discussed herein, the Individual Defendants' Motion to Dismiss will be granted and the plaintiff's claims against them will be dismissed without prejudice.

**BACKGROUND**

**I.  Overview**[2]

---

[1] The defendants note in a memorandum in support of their motion that the plaintiff has misspelled three of the Individual Defendants' names. The correct spellings are Sandra Cochran, Jay Janssen, Nick Flanagan, and Doug Barber, and are used throughout this Order.

[2] Unless otherwise indicated, the facts have been drawn from the Complaint. (Docket No. 1.)

1

Vickers is an Arkansas resident and a former employee of defendant Cracker Barrel Old Country Store, Inc. ("Cracker Barrel"). Cracker Barrel is a Tennessee corporation that operates restaurants and stores around the United States. Vickers worked at Cracker Barrel for nearly 20 years and, most recently, served as a district manager for 16 years in Arkansas. In this role, Vickers was responsible for a number of Cracker Barrel locations and was charged with supervising other individuals at those locations.

The Complaint alleges that Cracker Barrel engages in discriminatory hiring practices. Specifically, Vickers claims that Cracker Barrel fired him in retaliation for his opposition to and investigation of discrimination based on color and race in hiring and firing in violation of 42 U.S.C. § 1981. Vickers alleges that, in late 2012, a general manager working under Vickers' supervision, Roy Espe, stated at a meeting that "the way to keep staff in the dish-room [is] to hire Hispanics, preferably females." In February 2013, Vickers received a complaint of discrimination against Espe from an associate manager, Mike Wiggins. Wiggins alleged that Espe treated him in an abusive manner and discriminated against him based on his age. Vickers further alleges that Wiggins reported that Espe engaged in discrimination based on race, color, gender, and ethnicity because Espe would only allow his staff to hire Hispanic females in the dishroom. Upon corroboration of Wiggins' accusations against Espe from other managers, Vickers further investigated Espe by gathering information and engaging in interviews. After two days of investigation, Vickers recommended to his boss, defendant Charlie Austin, that Espe be fired. Following Vickers' recommendation, Austin and Cracker Barrel "took four months to do any further investigation" and, ultimately, only placed a note in Espe's file regarding the complaints.

In mid-March 2013, Austin met with Vickers to evaluate Vickers' performance. Although the evaluation was "overall good," Vickers was told that some areas of his job required improvement. At this time, Austin assigned Vickers to a performance improvement plan ("PIP"). Vickers alleges that the PIP "accused Vickers of things that were not true," including a high level of complaints and unexpected management turnover at his locations. Vickers further avers that he was treated dissimilarly than other district managers who had more serious performance issues, but were not disciplined or assigned to a PIP.

Following the initiation of Vickers' PIP, Vickers filed a charge with the federal Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation. Vickers also made a complaint to Cracker Barrel's employee relations manager, who supported Austin's decision to place Vickers on the PIP.

## II. Allegations as to the Individual Defendants

In May 2013, defendant Janssen, Cracker Barrel's Regional Human Resources Manager, joined Vickers and Cracker Barrel's Vice President of Human Resources, Mike Mott, at a meeting. At the meeting, Mott allegedly "told Vickers that he understood that Vickers and Charlie Austin were not getting along." Subsequently, Mott offered Vickers a severance package and warned Vickers that, "even if he did not accept the severance package [at this meeting], this is where it would end eventually." Vickers claims that, shortly after his meeting with Mott, his employment was suspended. Vickers was told that his suspension was "based on an investigation going into a [sic] accounts receivable issue in North Little Rock." Following his suspension, Vickers amended his EEOC charge to add further allegations of retaliation.

Shortly after the suspension, Cracker Barrel terminated Vickers. When Vickers turned in company property following his termination, he met with defendant Janssen. "Vickers asked Janssen why he was fired," and Janssen responded that Vickers "would have to take that up" with defendants Cochran (Cracker Barrel's Chief Executive Officer), Flanagan (Chief Operating Officer), and Barber (Chief People Officer).

### III. The Action

On October 22, 2013, Vickers filed the Complaint in this action. In the suit, Vickers names his employer, Cracker Barrel, as well as individuals in his direct chain of command: Charlie Austin, his direct supervisor; Janssen, his regional HR director; and three executives of the company, Cochran, Flanagan, and Barber. The Complaint alleges that Cracker Barrel, Austin, Cochran, Janssen, Flanagan, and Barber participated in a "carefully planned out pattern of discrimination and retaliation," culminating in Vickers' termination in retaliation for his investigation of discriminatory hiring practices. Vickers seeks (1) a declaratory judgment that the defendants have violated federal law; (2) an order directing Cracker Barrel to offer Vickers reinstatement and opportunities for promotion; (3) orders directing the defendants to take certain actions to prevent future discrimination, and (4) a variety of monetary damages.

## ANALYSIS

### I. Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The

4

Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## II. <u>Section 1981</u>

Section 1981 prohibits racial discrimination in private employment. 42 U.S.C. § 1981. Some courts have recognized a claim under Section 1981 against individual defendants, provided that those individuals exercised supervisory authority over the plaintiff and were *personally involved* in the discriminatory action. *See, e.g.*, *Allen v. Ohio Dep't of Rehab. & Corr.*, 128 F. Supp. 2d 483, 495 (S.D. Ohio 2001) (discussing theory in *dicta*); *Williams v. United Dairy Farmers,* 20 F.Supp.2d 1193, 1201-02 (S.D. Ohio 1998) (citing *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir. 1986)); *Grimes v. Superior Home Health Care of Middle Tenn., Inc.*,

5

929 F. Supp. 1088, 1096 (M.D. Tenn. 1996) ("A claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the discriminatory action."); *Williams v. Morgan Stanley & Co., Inc.,* No. 08-12435, 2009 WL 799162, at *3,*9 (E.D. Mich. Mar. 24, 2009) (collecting out-of-circuit cases and dismissing claims against individual defendants who did not allegedly supervise the plaintiff); *see also Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000). These courts have generally required some affirmative action—rather than a failure to act—by the supervisor that was causally connected to the discriminatory action. *See Malone v. State of Tenn.*, 03-2869 B, 2005 WL 2671343 (W.D. Tenn. Oct. 19, 2005); *see also Walker v. Wholesale, Inc.,* No. 3:12-cv-0595, 2013 WL 5502912 (M.D. Tenn. Oct. 2, 2013).

### III. <u>The Individual Defendants' Motion</u>

The Individual Defendants argue that Vickers' claim is deficient as a matter of law because he fails to allege any facts that would allow the court to draw a reasonable inference that Cochran, Janssen, Flanagan, and Barber are liable for retaliation. In opposition, the plaintiff contends that the Individual Defendants are prematurely requiring him to demonstrate a *prima facie* case in his Complaint.

It is settled that the application of the *McDonnell Douglas* standard to a Section 1981 claim at the pleading stage is "contrary to the Federal Rules' structure of liberal pleading requirements." *See Twombly*, 550 U.S. at 570 (discussing *Swierkiewicz*, 534 U.S. at 511); *Keys v. Humana*, 684 F.3d 605, 609-10 (6th Cir. 2012) (discussing *Twombly* and *Swierkiewicz* in the context of a motion to dismiss a Section 1981 claim and concluding that district court's

requirement that a complaint establish a *prima facie* case is contrary to Supreme Court and Sixth Circuit precedent). "Still, the Supreme Court established a plausibility standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination cases." *Keys*, 684 F.3d at 610. Accordingly, although Vickers need not present his *prima facie* case at this stage, he must allege "sufficient 'factual content' from which a court, 'informed by its judicial experience and common sense,' could 'draw the reasonable inference'" that Cochran, Janssen, Flanagan, and Barber were causally connected to the alleged discrimination against Vickers. *See id.* (quoting *Iqbal*, 556 U.S. at 678-79); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009) (explaining that courts review Section 1981 claims under the same standard as Title VII claims). Therefore, plausibility is Vickers' only burden at the pleading stage. As the Supreme Court has explained, "plausibility occupies that wide space between possibility and probability." *Iqbal*, 556 U.S. at 678. If the court may reasonably draw the necessary inference from the factual material stated in Vickers' Complaint, the plausibility standard has been satisfied.

**A. Sufficiency of Vickers' Allegations against the Individual Defendants**

Vickers' Complaint fails to assert more than speculative or conclusory allegations against the Individual Defendants. In fact, the only facts alleged related to the Individual Defendants are:

(1) The Individual Defendants' positions at Cracker Barrel, including their titles and seniority to Vickers in the chain of command;

(2) Vickers "met with" defendant Janssen to turn in company property following his termination;

> (3) When Vickers asked Janssen why he was terminated, Janssen "told Vickers that he would have to take that up with Sandy [Cochran], Nick [Flanagan], and Doug [Barber];" and
>
> (4) Flanagan made discriminatory age-related comments to Vickers and his colleagues, including stating at a meeting that Cracker Barrel "needed to get younger District Managers, and that their Field Managers were too old."

These facts, taken as true, are insufficient for the court to draw the necessary inference that the Individual Defendants were personally involved in the retaliatory action taken against Vickers.

As an initial matter, because Vickers limits his claim to retaliation based on his investigation of race-based discrimination—and includes no claims of age discrimination—the allegations of Flanagan's alleged discriminatory statements do not support the inference that Flanagan is liable for retaliation against Vickers. Furthermore, the plaintiff asks the court to draw an inference of individual liability as to the Individual Defendants solely because the Complaint describes a chain of command that links himself and the purported retaliatory actor—Charlie Austin—to the Individual Defendants. Alone, the fact that the Individual Defendants were senior to Vickers is insufficient to allege a claim under Section 1981. Moreover, allegations that the defendants may have known the reason for Vickers' termination are insufficient to raise an inference that the defendants were *personally involved* in the discriminatory action taken against Vickers. Accordingly, Vickers has failed to state a plausible claim for relief against the Individual Defendants and their Motion to Dismiss will be granted.

## IV. <u>Going Forward</u>

In light of the foregoing, the court will grant the Individual Defendants' motion and dismiss Vickers' claims against them. However, the dismissal of these claims will be without prejudice. The plaintiff shall be given until February 17, 2014 to file an amended complaint or

to otherwise move for an extension of this deadline upon a showing of good cause.[3] If neither the amended complaint nor a motion for extension is filed by the aforementioned deadline, the court will enter a final judgment in this case dismissing the plaintiff's claims with prejudice.

## **CONCLUSION**

For the reasons stated herein, the Individual Defendants' Motion to Dismiss (Docket No. 14) is **GRANTED WITHOUT PREJUDICE**. It is further **ORDERED** that the plaintiff shall be granted leave to file an Amended Complaint by February 17, 2014.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

---

[3] It appears that the plaintiff intended to submit a proposed Amended Complaint as an attachment to his Response to the defendants' motion but failed to do so. (Docket No. 20 at 6.)